Case: 5:21-cv-00206-KKC-MAS   Doc #: 81-4   Filed: 03/20/23   Page: 1 of 1 - Page ID#: 305

Stinson v. Protective Insurance Company     05/13/2022                John J. Vaughan, M.D.

EXHIBIT D

Page 79

primarily for his back pain was four years and seven months prior to the accident that occurred in 2019 --
A.  Uh-huh.
Q.  -- would that indicate a preexisting active condition?
     MS. NORRIS:  I'm going to object to the form. Doesn't state facts in evidence.
A.  I would say -- if it was a one-time episode, I would say -- I mean, again, I'm more used to doing this in a workers' comp scenario, but I would say it was a dormant condition if -- if it was a one-time episode in 2014 and then in 2019, but I've, you know, seen records where he's been in pain management for nine years, and I would say there was a preexisting active component prior, as I've alluded to before, but --
Q.  Even with no presentation between -- for his back pain between 2000 -- let's see.  So if there -- if he didn't -- if he didn't present for four years prior to the incident, you'd still consider it to be an active preexisting?
     MS. NORRIS:  Object.  Doesn't reflect the --
A.  Well, I've --
     MS. NORRIS:  -- facts in evidence.
A.  -- seen -- I've seen stuff where he's had

Page 80

five over ten back pain in '18, and, I mean, it -- again, I'm interpreting VA records, which are difficult to interpret, but -- and then if he was in pain management for nine years, taking oxycodone, and then in '18 he had an episode where he still listed back pain as five over ten, I'd say there was a preexisting active component.
     But in a hypothetical where there was just one encounter in '14 for back and leg pain and essentially no other treatment, I'd say -- I would weigh in and say it was a dormant, not active condition, if that is the hypothetical.
Q.  Okay.  How do you decipher between dormant preexisting and active preexisting?
A.  It's not a black-and-white situation. Different shades of gray on that.  But again, if someone has just one encounter, so you're going to look -- I mean, it's clear in cases where you look, there's no medical record of any back problems before, that's obvious, then you can attribute it to an accident.
     But then if there's previous encounters, you look at how long those encounters encompassed, how close they are related timewise to the incident at hand, the degree of treatment, those type of things.

Page 81

     So amount of treatment, magnitude of treatment, temporal relationship of previous treatment to the accident in question, those all things come into play.
Q.  I know you've already indicated that at the last encounter you had with Mr. Stinson, you did not recommend surgery.  Did you discuss other options or go into any more discussion?
A.  Pain management.  Basically I didn't think I could benefit this man by further surgery, and, you know, I recommended activity modification, I think either in that encounter or through things I filled out for various people.  But activity modification, which is the restrictions, and pain management.  And pain management works with medicines and, as I've alluded to previously, shots and that type of thing. So basically pain management and activity modifications.
Q.  Is this a situation -- is this -- strike that.
     Do you recall if you told Mr. Stinson surgery would never be an option?
A.  No, I didn't.  I said it's an option.  The difficult thing in treating this man surgically, it would probably involve a fusion, and fusions work

Page 82

well if it's kind of one bad level, but he's got several bad levels, and that just makes surgery harder, less successful.  So I'd say it's a possibility in the future but not anticipated or likely at this time.
Q.  For sake of argument, if he did have a preexisting active condition, how would an accident like a -- like a motor vehicle accident, how could that alter his symptoms?
     MS. NORRIS:  I'm just going to object to the form.  Outside the scope of expertise.  Biomechanism issue.
A.  Significant trauma can cause a chronic problem that has been there, it can cause it to be inflamed, more painful, exacerbated, flared up.  Different semantics to describe it.  Or it could tip it into the category of needing surgery where it was controlled nonsurgically prior to an event.
     So in his case, I think, you know, it can cause increased inflammation that can make it more painful.
Q.  I know you put him on a restriction to not lift, I believe it was over 20 pounds; is that accurate?
     MS. NORRIS:  No, I'm going to object.